UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| D.H., N.H., K.H. f/k/a J.H., Natasha Martin, Tiffaney Grissom, Rosa Gonzalez, Adrienne Bankston and Sarah Marchando, individually and on behalf of a class of all others similarly situated;<br><br>        Plaintiffs,<br><br>   -against-<br><br>THE CITY OF NEW YORK, SEAN KINANE, JOSEPH MCKENNA, KAYAN DAWKINS, THOMAS KEANE, MARIA IMBURGIA, KEVIN MALONEY, JOEL ALLEN, DAVE SIEV, BRYAN POCALYKO, CHRISTOPHER SAVARESE, THOMAS DIGGS, JOEL GOMEZ, KEITH BEDDOWS, CHRISTIAN SALAZAR, HENRY DAVERIN, JOSEPH NICOSIA, KELLY QUINN, ALEXIS YANEZ, MICHAEL DOYLE, JOHN/JANE DOE NYPD POLICE OFFICERS #1-14;<br><br>        Defendants. | 16-cv-07698 (PKC) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT ........................................................................................................................3

I.    PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE AND DECLARATORY
      RELIEF ........................................................................................................................3

II.   PLAINTIFFS ADEQUATELY PLEAD THAT SECTION 240.37 IS VOID FOR
      VAGUENESS AND OVERBROAD (COUNTS 1, 2) ....................................................7

      A.    Plaintiffs Plausibly Allege Section 240.37 Fails to Provide Law Enforcement with
            Minimal Guidelines to Prevent Arbitrary and Discriminatory Policing ..................7

      B.    Plaintiffs Plausibly Allege Section 240.37 Fails to Give Fair Notice of Prohibited
            Conduct ...................................................................................................................9

      C.    Plaintiffs Plausibly Allege Section 240.37 Is Unconstitutionally Overbroad ........10

III.  PLAINTIFFS ADEQUATELY PLEAD THAT DEFENDANTS INTENTIONALLY
      DISCRIMINATE ON THE BASIS OF RACE AND GENDER IN ENFORCING
      SECTION 240.37 (COUNTS 5, 6, 8, 11, 16, 18) ........................................................11

      A.    Plaintiffs Plausibly Allege Intentional Discrimination on the Basis of Gender ....12

      B.    Plaintiffs Plausibly Allege Intentional Discrimination on the Basis of Race ........16

      C.    Defendants Are Not Entitled to Qualified Immunity ...........................................17

      D.    Plaintiffs Plausibly Allege Intentional Discrimination Under 42 U.S.C. §§ 1981,
            2000d and New York Civil Rights Law §§ 40-c, 40-d, 79-n .............................19

IV.   PLAINTIFFS ADEQUATELY PLEAD THAT THE SWEEP DEFENDANTS
      CONSPIRED TO ENFORCE SECTION 240.37 IN A DISCRIMINATORY MANNER
      (COUNT 10) ...............................................................................................................19

      A.    The Sweep Defendants Engaged in a Conspiracy to Deprive the Transgender
            Plaintiffs of the Equal Protection of the Laws Under 42 U.S.C. § 1985(3) ..........20

      B.    The Intracorporate Conspiracy Doctrine Does Not Bar Plaintiffs' Claims ..........22

V.    THE NYPD IS A PROVIDER OF PUBLIC ACCOMODATION (COUNTS 12, 19) ....22

VI.   THE NOTICE OF CLAIM REQUIREMENT DOES NOT APPLY BECAUSE
      PLAINTIFFS' STATE LAW CLAIMS SEEK TO VINDICATE PUBLIC RIGHTS .....24

VII.  THE AMENDED COMPLAINT ADEQUATELY PLEADS THE PERSONAL
      INVOLVEMENT OF SUPERVISORY DEFENDANTS ...............................................24

CONCLUSION ....................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. City of New York*,
143 F. Supp. 3d 134 (S.D.N.Y. 2015) ................................................................. 15, 18

*Aguilar v. ICE Div. of the U.S. Dep't of Homeland Sec.*,
811 F. Supp. 2d 803 (S.D.N.Y. 2011)...................................................................... 4, 5

*Ali v. Connick*,
136 F. Supp. 3d 270 (E.D.N.Y. 2015) ................................................................. 21, 22

*Anilao v. Spota*,
774 F. Supp. 2d 457 (E.D.N.Y. 2011)......................................................................... 20

*Atkins v. Cty. of Orange*,
251 F. Supp. 2d 1225 (S.D.N.Y. 2003)...................................................................... 24

*Ayissi-Etoh v. Fannie Mae*,
712 F.3d 572 (D.C. Cir. 2013)..................................................................................... 14

*Back v. Hastings on Hudson Union Free Sch. Dist.*,
365 F.3d 107 (2d Cir. 2004) ......................................................................... 13, 18, 19

*Barber v. Henderson*,
No. 12 Civ. 239, 2014 WL 4064036 (N.D. Okla. Aug. 15, 2014) ....................... 12, 16

*Battle v. City of New York*,
No. 11 Civ. 3599, 2012 WL 112242 (S.D.N.Y. Jan. 12, 2012) .............................. 4, 5

*Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.*,
482 U.S. 569 (1987).................................................................................................... 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................... 20

*Bertuglia v. City of New York*,
839 F. Supp. 2d 703 (S.D.N.Y. 2012)......................................................................... 6

*Boureima v. N.Y.C. Human Res. Admin.*,
128 A.D.3d 532 (First Dep't 2015)............................................................................. 23

*Brodt v. City of New York*,
4 F. Supp. 3d 562 (S.D.N.Y. 2014) ........................................................................... 14

*Brown v. City of Oneonta, N.Y.*,
221 F.3d 329 (2d Cir. 2000) ...........................................................................................12

*Brown v. Municipality of Anchorage*,
584 P.2d 35 (Alaska 1978) ........................................................................................8, 10

*Butler v. Suffolk County*,
289 F.R.D. 80 (E.D.N.Y. 2013)........................................................................................24

*Cahill v. Rosa*,
89 N.Y.2d 14 (1996) .................................................................................................22-23

*Carlin v. Davidson Fink LLP*,
No. 15 Civ. 3105, 2017 WL 1160887 (2d Cir. Mar. 29, 2017)..........................................7

*Christiansen v. Omnicom Grp., Inc.*,
No. 16 Civ. 748, 2017 WL 1130183 (2d Cir. Mar. 27, 2017)...............................13, 18

*Ciambriello v. Cty. of Nassau*,
292 F.3d 307 (2d Cir. 2002) ...........................................................................................21

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)...........................................................................................................3

*City of West Palm Beach v. Chatman*,
112 So.3d 723 (Fla. Dist. Ct. App. 2013) ......................................................................10

*Cleveland v. Howard*,
532 N.E.2d 1325 (Cleveland Mun. Ct. 1987)...................................................................9

*Cleveland v. Mathis*,
735 N.E.2d 949 (Ohio Ct. App. 1999) .............................................................................9

*Climo v. Rustin*,
No. 11 Civ. 1339, 2012 WL 3779178 (W.D. Pa. Aug. 31, 2012) ...................................21

*Coggins v. Cty. of Nassau*,
988 F. Supp. 2d 231 (E.D.N.Y. 2013)......................................................................21, 22

*Cole v. Richardson*,
405 U.S. 676 (1972).........................................................................................................8

*Coleman v. Richmond*,
364 S.E.2d 239 (Va. Ct. App. 1988).........................................................................8, 10

*Colon v. Coughlin*,
58 F. 3d 865 (2d Cir. 1995) ...........................................................................................25

*Corsini v. Bloomberg*,
26 F. Supp. 3d 230 (S.D.N.Y. 2014)..................................................................20

*Crews v. Cty. of Nassau*,
No. 06 Civ. 2610, 2007 WL 4591325 (E.D.N.Y. Dec. 27, 2007) ...............................25

*Cunney v. Bd. of Tr. of Vill. of Grand View, N.Y.*,
660 F.3d 612 (2d Cir. 2011) ...............................................................................7

*D'Altilio v. Dover Twp.*,
No. 06 Civ. 1931, 2008 WL 3925833 (M.D. Pa. Aug. 21, 2008) ...............................14

*Davis v. City of New York*,
902 F. Supp. 2d 405 (S.D.N.Y. 2012)..................................................................24

*De Litta v. Vill. of Mamaroneck*,
166 F. App'x 497 (2d Cir. 2005) .........................................................................20

*Deshawn E. ex rel. Charlotte E. v. Safir*,
156 F.3d 340 (2d Cir. 1998) ............................................................................3, 4

*Diamond v. Witherspoon*,
696 N.W.2d 770 (Mich. Ct. App. 2005) ...............................................................23

*Diaz-Bernal v. Myers*,
758 F. Supp. 2d 106 (D. Conn. 2010) ............................................................. 12, 16

*Doe v. City of Belleville*,
119 F.3d 563 (7th Cir. 1997) .............................................................................15

*Doe v. City of New York*,
976 N.Y.S.2d 360 (Sup. Ct. N.Y. Cty. 2013) ........................................................23

*Doe v. Columbia Univ.*,
831 F.3d 46 (2d Cir. 2016) ................................................................................11

*Franza v. Carey*,
518 F. Supp. 324 (S.D.N.Y. 1981)........................................................................8

*Gifford v. McCarthy*,
137 A.D.3d 30 (Third Dep't 2016) ......................................................................23

*Glenn v. Brumby*,
663 F.3d 1312 (11th Cir. 2011) ..........................................................................18

*Gonzales v. Carhart*,
550 U.S. 124 (2007)..........................................................................................8

*Grayned v. City of Rockford*,
408 U.S. 104 (1972)......................................................................................................8

*Green v. City of New York*,
438 F. Supp. 2d 111 (E.D.N.Y. 2006)........................................................................23

*Hill v. City of New York*,
136 F. Supp. 3d 304 (E.D.N.Y. 2015)........................................................................11

*Hill v. City of New York*,
No. 03 Civ. 1283, 2005 WL 3591719 (E.D.N.Y. Dec. 30, 2005) ...............................22

*Hope v. Pelzer*,
536 U.S. 730 (2002)....................................................................................................18

*Howard v. Senkowski*,
986 F.2d 24 (2d Cir. 1993)..........................................................................................11

*Jones v. Parmley*,
465 F.3d 46 (2d Cir. 2006) ..........................................................................................18

*Kastl v. Maricopa Cty. Cmty. Coll. Dist.*,
No. 02 Civ. 1531, 2004 WL 2008954 (D. Ariz. June 3, 2004) ...................................19

*Kastle v. Town of Kent, N.Y.*,
No. 13 Civ. 2256, 2014 WL 1508703 (S.D.N.Y. Mar. 21, 2014) ...............................20

*Lacey v. Maricopa Cty.*,
693 F.3d 896 (9th Cir. 2012) .......................................................................................16

*Leon v. Murphy*,
988 F.2d 303 (2d Cir. 1993) ........................................................................................20

*Ligon v. City of New York*,
925 F. Supp. 2d 478 (S.D.N.Y. 2013).........................................................................5

*Louis v. Metro. Transit Auth.*,
145 F. Supp. 3d 215 (E.D.N.Y. 2015) ...................................................................14, 17

*McCants v. City of Newburgh*,
No. 14 Civ. 556, 2014 WL 6645987 (S.D.N.Y. Nov. 21, 2014) ................................6

*Nat'l Congress for Puerto Rican Rights v. City of New York*,
191 F.R.D. 52 (S.D.N.Y. 1999) ..................................................................................16

*Nat'l Congress for Puerto Rican Rights v. City of New York*,
75 F. Supp. 2d 154 (S.D.N.Y. 1999)...........................................................................5

*Nicacio v. INS*,
768 F.2d 1133 (9th Cir. 1985) ................................................................................4

*Pangburn v. Culbertson*,
200 F.3d 65 (2d Cir. 1999) ...................................................................................20

*Papachristou v. City of Jacksonville*,
405 U.S. 156 (1972) ...............................................................................................1

*People United for Children, Inc. v. City of New York*,
108 F. Supp. 2d 275 (S.D.N.Y. 2000) ............................................................12, 16

*People v. Smith*,
44 N.Y.2d 613 (1978) .............................................................................................8

*Price Waterhouse v. Hopkins*,
490 U.S. 228 (1989) .......................................................................................13, 18

*Ptaszynski v. Uwaneme*,
853 A.2d 288 (N.J. Super. Ct. App. Div. 2004) ....................................................23

*Pyke v. Cuomo*,
258 F.3d 107 (2d Cir. 2001) ...........................................................................11, 12

*Reeves v. Sanderson Plumbing Prod., Inc.*,
530 U.S. 133 (2000) .............................................................................................15

*Rodriguez v. Cal. Highway Patrol*,
89 F. Supp. 2d 1131 (N.D. Cal. 2000) ..................................................................12

*Romer v. Evans*,
517 U.S. 620 (1996) .............................................................................................19

*Rosa v. Park W. Bank & Trust Co.*,
214 F.3d 213 (1st Cir. 2000) ................................................................................18

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
547 U.S. 47 (2006) .................................................................................................5

*Savino v. Town of Southeast*,
983 F. Supp. 2d 293 (S.D.N.Y. 2013) .......................................................12, 14, 17

*Shuttlesworth v. City of Birmingham*,
382 U.S. 87 (1965) .................................................................................................8

*Silvar v. Eighth Jud. Dist. Ct. ex rel. Cty. of Clark*,
129 P.3d 682 (Nev. 2006) .....................................................................................10

*Smith v. City of Chicago*,
143 F. Supp. 3d 741 (N.D. Ill. 2015) ...................................................................16

*Smith v. City of Salem, Ohio*,
378 F.3d 566 (6th Cir. 2004) ...............................................................................18

*Troy v. City of New York*,
No. 13 Civ. 5082, 2014 WL 4804479 (S.D.N.Y. Sept. 25, 2014) ...........................16

*Turkmen v. Hasty*,
789 F.3d 218 (2d Cir. 2015) ..........................................................................*passim*

*U.S. Power Squadrons v. State Human Rights Appeal Bd.*,
59 N.Y.2d 401 (1983) ...........................................................................................22

*Union Free Sch. Dist. No. 6 v. N.Y. State Human Rights Appeal Bd.*,
35 N.Y.2d 371 (1974) ...........................................................................................24

*United States v. Armstrong*,
517 U.S. 456 (1996) ..............................................................................................12

*United States v. City of Yonkers*,
96 F.3d 600 (2d Cir. 1996) ...................................................................................12

*United States v. Rybicki*,
354 F.3d 124 (2d Cir. 2003) .................................................................................10

*United States v. Virginia*,
518 U.S. 515 (1996) ..............................................................................................18

*United States v. Williams*,
535 U.S. 285 (2008) ..............................................................................................11

*Valdez v. City of San Jose*,
No. 09 Civ. 0176, 2013 WL 752498 (N.D. Cal. Feb. 27, 2013) ............................16

*Vandegrift v. Bowen*,
No. 07 Civ. 2623, 2009 WL 1913412 (D.N.J. Jun. 30, 2009)................................23

*Vega v. Hempstead Union Free Sch. Dist.*,
801 F.3d 72 (2d Cir. 2015) ...................................................................................11

*Vill. of Hoffman Est. v. Flipside, Hoffman Est., Inc.*,
455 U.S. 489 (1982)..............................................................................................10

*Virginia v. Hicks*,
539 U.S. 113 (2003)...........................................................................................7, 10

*Walker v. Vill. of Freeport*,
No. 15 Civ. 4646, 2016 WL 4133137 (E.D.N.Y. June 13, 2016) ................................................25

*White v. City of New York*,
206 F. Supp. 3d 920 (S.D.N.Y. 2016) ....................................................................................19

*White v. City of New York*,
No. 13 Civ. 7421, 2015 WL 4601121 (S.D.N.Y. July 31, 2015) .................................................6

*Wright v. Smith*,
21 F.3d 496 (2d Cir. 1994) ........................................................................................................25

*Wu v. City of New York*,
934 F. Supp. 581 (S.D.N.Y. 1996) ..............................................................................................6

*Wyche v. State*,
619 So.2d 231 (Fla. 1993) ........................................................................................................10

*Yeadon v. N.Y. City Transit Auth.*,
719 F. Supp. 204 (S.D.N.Y. 1989) ............................................................................................22

## Rules and Statutes

N.Y.C. Admin. Code § 8-130 ....................................................................................................23

N.Y. Exec. Law § 292 ................................................................................................................23

N.Y.P.L § 15.05 ..........................................................................................................................7

N.Y.P.L § 110.00 ........................................................................................................................11

N.Y.P.L § 230.00 ........................................................................................................................11

N.Y.P.L § 240.37 ................................................................................................................*passim*

N.Y.P.L § 245.00 ........................................................................................................................11

## PRELIMINARY STATEMENT

Plaintiffs have brought this civil rights action on behalf of themselves and a class of similarly situated women of color to challenge New York Penal Law Section 240.37, a constitutionally defective statute that criminalizes innocent conduct, including protected speech, based on a subjective determination by a police officer that the conduct is "for the purpose of prostitution."[1]  Because Section 240.37 provides "no standards governing the exercise of th[is] discretion," it, like similar statutes that have been invalidated, "furnishes a convenient tool for 'harsh and discriminatory enforcement'" by NYPD officers "'against particular groups deemed to merit their displeasure' [and] results in a regime in which" women of color, particularly transgender women, "are permitted to 'stand on a public sidewalk . . . only at the whim of any police officer.'"  *Papachristou v. City of Jacksonville*, 405 U.S. 156, 170-71 (1972).  Each Plaintiff has been unlawfully arrested and detained by NYPD officers at least once under Section 240.37 in violation of her constitutional and statutory rights.  And despite the fact that all charges under Section 240.37 against Plaintiffs have been dismissed, they continue to face a threat of future unlawful stops and arrests because NYPD officers target Plaintiffs and members of the proposed Plaintiff Class based on their gender and race and based on prior arrests, for doing nothing more than walking down the street in the neighborhoods where they live.

Defendants' partial motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure must be denied because it ignores the detailed factual allegations in Plaintiffs' Amended Complaint, which establish that Plaintiffs have plausibly stated claims for the vindication of their rights under the First, Fourth and Fourteenth Amendments of the United States Constitution, as well as related statutory rights and rights under the New York State

---

[1] All capitalized terms not defined herein have the meaning ascribed to them in the Amended Complaint, Dkt. No. 86 ("Amended Complaint" or "Am. Compl.").  Defendants' Memorandum of Law In Support of Their Partial Motion to Dismiss, Dkt. No. 89, is referenced herein as Defendants' Brief ("Defs.' Br.").

Constitution, and that they have standing to seek injunctive and declaratory relief based on those claims.  Each of Defendants' arguments lacks merit:

- Plaintiffs have standing to seek injunctive relief because they face the threat of future unlawful arrests or other constitutional deprivations as a result of the NYPD's policies, practices and customs, including guidance in the NYPD Patrol Guide permitting officers to arrest Plaintiffs based solely on a past prostitution-related arrest, regardless of whether that prior arrest was improper and whether any charges were ultimately dismissed.  Nor can Defendants evade the Court's jurisdiction based on their perverse argument that NYPD officers would disregard an order of the Court enjoining unconstitutional enforcement of Section 240.37, *see infra* Part I;

- Plaintiffs adequately plead claims challenging Section 240.37 as void for vagueness and overbroad, including because the statute fails to provide objective criteria for enforcement, and because enforcement of the statute is arbitrary and discriminatory and substantially chills Plaintiffs' exercise of their First Amendment rights, *see infra* Part II;

- Plaintiffs adequately plead claims of intentional discrimination by Defendants on the basis of race and gender in enforcing Section 240.37, including based on statistical evidence demonstrating biased enforcement, invidious comments by NYPD officers and widespread practices of arresting women on the basis of gender stereotypes, *see infra* Part III;

- Plaintiffs adequately plead that the Sweep Defendants engaged in a conspiracy to enforce Section 240.37 in a manner that discriminated against the transgender Plaintiffs, as shown by the volume of arrests, coordination of falsified arrest paperwork and express admissions and threats made by participating officers, *see infra* Part IV;

- Plaintiffs have stated claims under the New York State and New York City Human Rights Laws against the NYPD because the NYPD consistently interacts with and provides services to the public and therefore is subject to those laws as a provider of a "public accommodation," *see infra* Part V;

- By asserting state law claims challenging the constitutionality of Section 240.37, Plaintiffs seek to vindicate important public rights, and therefore are exempted from the notice of claim requirement that might otherwise apply, *see infra* Part VI; and

- Plaintiffs have plausibly stated a claim for relief against Defendant NYPD officers who served in a supervisory role, including by alleging their direct involvement in unlawful enforcement of Section 240.37, their failure to remedy such practices and their involvement in fostering such conduct, *see infra* Part VII.

## ARGUMENT

### I.   PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE AND DECLARATORY RELIEF

Defendants challenge Plaintiffs' standing to seek injunctive or declaratory relief in connection with each of the claims in the Amended Complaint, relying primarily on the erroneous contention that Plaintiffs have not adequately alleged that they are likely to face future harm based on the arbitrary, discriminatory and unconstitutional enforcement of Section 240.37.  *See* Defs.' Br. at 6-11.[2]  The Court should reject Defendants' argument because it altogether fails to address the relevant allegations in the Amended Complaint.  Not only have Plaintiffs been wrongly arrested in the past under Section 240.37, but the Amended Complaint details several factors showing that Plaintiffs face a "realistic[] threat[]" of future improper stops or arrests, which is plainly sufficient to confer standing.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 109 (1983).

First, Plaintiffs face an increased threat of future unlawful stops and arrests precisely because the NYPD maintains an express policy directing officers to rely on a prior arrest under Section 240.37 as a basis for a future arrest, even if the arrestee was never prosecuted or convicted. Am. Compl. ¶¶ 83-84.  Defendants ignore this fundamental causal link between Plaintiffs' past arrests and the risk of future constitutional violations.  Yet the likelihood of future harm to Plaintiffs based on their prior improper arrests is arguably even higher than it was for plaintiffs in *Deshawn*, who were found to have standing to challenge improper interrogations because information learned in those interrogations could be used in future cases against them.  *See Deshawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998).

The Amended Complaint also describes an incident in which one of the Defendants, after

---

[2] While Defendants assert that their standing arguments support dismissal of the "First through Fourteenth Causes of Action," the arguments, by their terms, do not limit Plaintiffs' standing to seek damages based on these claims, to the extent available.

arresting N.H. under Section 240.37, as well as other transgender women of color in the same

"sweep," threatened them with subsequent arrest if NYPD officers ever saw "girls like them"

outside after midnight in the neighborhood where N.H. lives.  Am. Compl. ¶¶ 74, 134.  The very

next week, NYPD officers conducted another sweep in the same neighborhood, unlawfully

arresting multiple additional transgender Plaintiffs, including K.H., under Section 240.37.  *Id.*

¶¶ 75, 146.  This express threat of improper law enforcement activity, coupled with the fulfillment

of that threat, refutes Defendants' attempt to label the prospect of future arrests as somehow

"speculative."  Defs.' Br. at 10.  The "possibility of recurring injury ceases to be speculative when

actual repeated incidents are documented."  *Nicacio v. INS*, 768 F.2d 1133, 1137 (9th Cir. 1985);

*Deshawn*, 156 F.3d at 344 (citing *Nicacio* with approval); *see also Aguilar v. ICE Div. of the U.S.*

*Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 827 (S.D.N.Y. 2011).

Defendants similarly fail to address the other allegations in the Amended Complaint about

instances in which specific Plaintiffs were subjected to repeated improper stops, questioning or

arrests under Section 240.37.  *See, e.g.*, Am. Compl. ¶¶ 219-39 (Ms. Marchando arrested twice in

the span of eight days in East New York); *id.* ¶¶ 179-92 (Ms. Grissom repeatedly followed,

stopped, questioned).  Defendants have not identified a single case in which a court has held that a

plaintiff who had been subjected to more than one unconstitutional arrest lacked standing to

challenge the policies or practices that led to those arrests.  *See* Defs.' Br. at 10-11.  Not only have

courts held that a single incident may be sufficient to confer standing,[3] *see, e.g.*, *Battle v. City of*

*New York*, No. 11 Civ. 3599, 2012 WL 112242, at *3, 4 (S.D.N.Y. Jan. 12, 2012), but at least one

court has held that two improper arrests of a single plaintiff, standing alone, demonstrate a realistic

---

[3] In addition to misstating the law, Defendants' argument that "one to two incidents are insufficient to confer standing," Defs.' Br. at 10, is irrelevant given that the Amended Complaint describes nine arrests of the Named Plaintiffs in the three years preceding the commencement of this action, as well as systematic unconstitutional enforcement of Section 240.37 against numerous members of the proposed Plaintiff Class.  Am. Compl. ¶¶ 108-239.

threat of future harm, *see Ligon v. City of New York*, 925 F. Supp. 2d 478, 522 (S.D.N.Y. 2013), which establishes standing for all Plaintiffs, *see Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 53 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.").[4]

Nor can Defendants challenge Plaintiffs' standing based on Defendants' erroneous contention that "Plaintiffs have not alleged the existence of an official policy or its equivalent." Defs.' Br. at 11.[5]  Defendants concede, as they must, that Plaintiffs "allege 'a pattern and widespread practice'" of enforcing Section 240.37 in an unconstitutional manner and "'fail[ing] to provide law enforcement with clear guidelines.'" *Id.* (quoting Am. Compl. ¶¶ 10, 50).  This concession is fatal to Defendants' argument because a "widespread custom or failure to train" constitutes an official policy or its equivalent for purposes of analyzing standing.  *Battle*, 2012 WL 112242, at *4; *see also Aguilar*, 811 F. Supp. 2d at 826-28.  Among other things, Plaintiffs allege that the NYPD: engaged in organized sweep arrests of transgender women, Am. Compl. ¶¶ 9, 14, 15, 73-75, 134, 189; used performance goals and arrest quotas that encourage unlawful arrests, *id.* ¶¶ 70, 76-81; arrested Plaintiffs without probable cause after briefly observing them engaged in innocent conduct, *id.* ¶¶ 110-11, 128-29, 146-47, 162-63, 182-83, 195-96, 212, 221-23, 230-31; targeted women in minority neighborhoods for arrest, *id.* ¶¶ 94, 189; falsified arrest paperwork, *id.* ¶¶ 121, 138, 153, 171, 187, 200, 213, 234; and remained deliberately indifferent to the unlawful enforcement of Section 240.37 by failing to adequately train, monitor, supervise

---

[4] Defendants misplace reliance on numerous cases involving unconstitutional treatment during the course of an *otherwise lawful arrest.  See* Defs.' Br. at 8-9.  Here, however, the unconstitutional conduct is the *arrest itself.*  The difference is critical: this is not a case in which Plaintiffs can minimize the likelihood of a future encounter simply by refraining from unlawful activity.  Plaintiffs have been—and may be again in the future—unlawfully stopped and arrested "while engaging in everyday tasks."  *Nat'l Congress for Puerto Rican Rights v. City of New York*, 75 F. Supp. 2d 154, 161 (S.D.N.Y. 1999).

[5] Moreover, any requirement to show an official policy or the equivalent applies only to claims involving municipal liability, and not, for example, to Plaintiffs' vagueness and overbreadth claims (Counts One and Two).

or discipline responsible officers despite being on notice of the need for corrective action, *id.*
¶¶ 9, 69-70,76-77, 94, 99-107.  In any event, the Amended Complaint also alleges that official

NYPD policies cause officers to effectuate arrests without probable cause.  *See, e.g., id.* ¶ 83

(describing relevant provisions of NYPD Patrol Guide[6] that encourage unconstitutional

enforcement of Section 240.37); *id.* ¶ 86 (describing NYPD's official policy of using pre-printed

affidavits that permit officers to justify arrests merely by checking a box that the arrestee was

"dressed in provocative or revealing clothing").[7]

Defendants' final argument—that because some of the Individual Defendants "lied under

oath" and falsified paperwork to justify Plaintiffs' false arrests, Plaintiffs' injuries "would [not]

be prevented by the equitable relief sought," Defs.' Br. at 14—exemplifies truly perverse logic.

In essence, Defendants urge the Court not to adjudicate this matter because NYPD officers

would simply flout any order by the Court that required the City to implement appropriate training

and supervision with respect to the statute's enforcement.  To the extent Defendants assert that no

order of this Court can cause Defendants to enforce Section 240.37 in a lawful and constitutional

manner, Defendants have proven Plaintiffs' argument that the statute's vagueness and overbreadth

gives officers unbridled discretion and permits precisely the types of arbitrary and discriminatory

---

[6] *See Wu v. City of New York*, 934 F. Supp. 581, 591 (S.D.N.Y. 1996) ("The [NYPD] patrol guide may be fairly said to represent official policy [for purposes of a § 1983 claim].").

[7] As Defendants further concede, Plaintiffs may also alternatively satisfy the official policy requirement by alleging deliberate indifference—"the need for more or better supervision to protect against constitutional violations," as Plaintiffs have done here.  *White v. City of New York*, No. 13 Civ. 7421, 2015 WL 4601121, at *5 (S.D.N.Y. July 31, 2015).  *See* Am. Compl. ¶¶ 54, 99-107 (City knew or should have known of need for corrective action to prevent violations of Plaintiffs' rights because of, *inter alia*, (1) the City's performance goal and quota policies encouraging aggressive law enforcement activities, (2) inconsistent arrest paperwork stating that Individual Defendants were in two places at once while effecting arrests pursuant to Section 240.37, and (3) law enforcement statistics and records indicating transgender women of color have been targeted for arrest and systematically mistreated, and the City failed to take corrective action, including because it continues to use a defective Patrol Guide).  Defendants misunderstand the relevance of the prior lawsuits referenced in the Amended Complaint, which show that Defendants had notice of repeated allegations of misconduct, yet took no corrective action.  *See McCants v. City of Newburgh*, No. 14 Civ. 556, 2014 WL 6645987, at *4 (S.D.N.Y. Nov. 21, 2014) (denying motion to dismiss where the plaintiff cited similar prior lawsuits as evidence that the city was on notice of potential conduct); *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 738-39 (S.D.N.Y. 2012) (same).

enforcement described in the Amended Complaint.

## II.   PLAINTIFFS ADEQUATELY PLEAD THAT SECTION 240.37 IS VOID FOR VAGUENESS AND OVERBROAD (COUNTS 1, 2)

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, *accepted as true*, to state a claim to relief that is plausible on its face." *Carlin v. Davidson Fink LLP*, No. 15 Civ. 3105, 2017 WL 1160887, at *3 (2d Cir. Mar. 29, 2017) (emphasis added). A penal statute is void for vagueness if it: (1) fails to provide minimal guidelines to govern law enforcement, thereby encouraging arbitrary or discriminatory enforcement, *see Cunney v. Bd. of Tr. of Vill. of Grand View, N.Y.*, 660 F.3d 612, 621-22 (2d Cir. 2011), or (2) fails to give ordinary people "fair notice" that the state has proscribed certain behavior, *see id.* at 620-21. Further, a law is unconstitutionally overbroad if it "punishes a substantial amount of protected free speech, judged in relation to [its] plainly legitimate sweep." *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003) (quotation marks omitted). Plaintiffs have adequately pleaded that Section 240.37 is void for vagueness under both the fair enforcement and fair notice tests and is unconstitutionally overbroad.

### A.   Plaintiffs Plausibly Allege Section 240.37 Fails to Provide Law Enforcement with Minimal Guidelines to Prevent Arbitrary and Discriminatory Policing

Under Section 240.37, members of the proposed Plaintiff Class are frequently arrested for innocuous and constitutionally protected behavior, such as "engag[ing] passers-by in conversation," merely because an NYPD officer incorrectly determined that they acted "for the purpose of prostitution." Am. Compl. ¶¶ 64-66, 108-239. Yet the statute fails even to define "purpose,"[8] let alone provide any objective criteria by which to discern it.[9] As a result, the

---

[8] "Purpose," unlike "criminal intent" and other terms pertaining to *mens rea*, is not defined in New York's Penal Law. *See* N.Y.P.L. § 15.05.

[9] Defendants bizarrely attempt to argue that the *lack* of objective criteria in Section 240.37 saves the statute. *See* Defs.' Br. at 4-5. But providing more specificity in delineating impermissible conduct would not make the statute

difference between protected and prohibited conduct turns entirely on the subjective views of a police officer, who is left to decide whether innocent behavior is for the "purpose" of prostitution based on a variety of reasons not enumerated in the statute. *See Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 90 (1965) (noting "constitutional vice" of an ordinance that essentially says "a person may stand on a public sidewalk . . . only at the whim of any police officer").

In analyzing whether the statute, as drafted, permits arbitrary and discriminatory enforcement, and is therefore void for vagueness, this Court may properly consider evidence regarding the enforcement of Section 240.37. *See Gonzales v. Carhart*, 550 U.S. 124, 150 (2007); *Cole v. Richardson*, 405 U.S. 676, 685 (1972); *see also Franza v. Carey*, 518 F. Supp. 324, 341 (S.D.N.Y. 1981). For example, Plaintiffs allege that NYPD officers routinely arrest women under Section 240.37 without probable cause, Am. Compl. ¶ 101 & n.26, including by arresting women (1) based solely on a prior prostitution-related arrest, even if the charges were unsubstantiated and dismissed, *id.* ¶¶ 83-84; (2) for being in certain neighborhoods—predominantly communities of color—that the police arbitrarily designate as "prostitution prone," *id.* ¶¶ 88-89, 96-97; and (3) engaged in innocent conduct after observing them briefly, *id.* ¶ 90. Plaintiffs also allege that such discriminatory enforcement results in arrests of women of color under the statute at a much higher rate than men or white women. *Id.* ¶¶ 71-75, 91 & n.16, 98. In short, the Amended Complaint plausibly alleges that Section 240.37 fails to "provide explicit standards for those who apply [it]," *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972), resulting in arbitrary and discriminatory policing.[10]

---

*more* vague, nor do the cases discussed by Defendants suggest this. *See Brown v. Municipality of Anchorage*, 584 P.2d 35, 36-37 (Alaska 1978); *Coleman v. Richmond*, 364 S.E.2d 239, 243-44 (Va. Ct. App. 1988).

[10] Although the New York Court of Appeals in *People v. Smith* declined to hold Section 240.37 unconstitutional under a "fair enforcement" theory, that decision is based on a circumscribed factual record that did not include the types of allegations in the Amended Complaint here. 44 N.Y.2d 613 (1978). For example, based on the limited record before it, the Court held that "the mere fact that an officer *in a particular case* did not have probable cause to

Tellingly, Defendants assert that Section 240.37 "most closely resembles" the ordinance at issue in *Cleveland v. Howard*, 532 N.E.2d 1325 (Cleveland Mun. Ct. 1987), which defendants contend "withstood vagueness and overbreadth challenges." Defs.' Br. at 5-6. But that statute *has since been declared void for vagueness* because, like Section 240.37, "[f]actors other than those enumerated in the statute can be considered" by law enforcement. *Cleveland v. Mathis*, 735 N.E.2d 949, 952 (Ohio Ct. App. 1999). Defendants also concede that other similar statutes have been struck down in other states because they allowed officers to infer intent from enumerated criteria "such as being a known prostitute." Defs.' Br. at 5. Yet the absence of any explicit criteria in Section 240.37 has allowed Defendants to adopt precisely the same flawed approach to enforcing the statute that is set forth in the NYPD Patrol Guide, which instructs officers to infer "purpose" based on prior arrests under Section 240.37. *See* Am. Compl. ¶ 83.

### B.   Plaintiffs Plausibly Allege Section 240.37 Fails to Give Fair Notice of Prohibited Conduct

The text of Section 240.37 not only fails to provide any guidance on how to enforce the law, but also fails to provide members of the public with sufficient guidance on how to conform their behavior to it. Section 240.37 prohibits loitering only when done for a specific purpose—prostitution. While the statute enumerates certain indicia of prostitution, all are constitutionally-protected activities; the *only* way to *attempt* to avoid arrest is to refrain from that constitutionally-protected conduct entirely. The other factors considered by police officers enforcing the statute—such as a woman's clothing or the neighborhood in which she is observed—are unascertainable to the public and therefore do not provide the notice required by law.

---

arrest [a] defendant would not warrant the invalidation of the statute," *id.* at 621 (emphasis added). That may be true, but evidence of *years* of *repeated* arrests lacking in probable cause *is* grounds for invalidation. Additionally, although *Smith* states that Section 240.37 "does not authorize an arrest or conviction based on simple loitering by a known prostitute," *id.*, that is precisely how the statute is being enforced today, Am. Compl. ¶ 83 (citing Patrol Guide at PG 208-45, ¶ 3).

Defendants assert that Section 240.37 gives "adequate notice" to the public merely because it includes a specific intent element.  Defs.' Br. at 2-3.  But the specific intent element is meaningless where, as here, one's "purpose" is determined on the basis of wholly subjective judgments by individual officers.  Section 240.37 is thus no different from statutes criminalizing "manifestations" of a criminal purpose that have been struck down as impermissibly vague.  *See, e.g.*, *Silvar v. Eighth Jud. Dist. Ct. ex rel. Cty. of Clark*, 129 P.3d 682, 684-85 (Nev. 2006); *Wyche v. State*, 619 So.2d 231, 234, 236-37 (Fla. 1993); *Brown*, 584 P.2d at 36-37; *City of West Palm Beach v. Chatman*, 112 So.3d 723, 725, 728-29 (Fla. Dist. Ct. App. 2013); *Coleman*, 364 S.E.2d at 243-44.[11]

### C.   Plaintiffs Plausibly Allege Section 240.37 Is Unconstitutionally Overbroad

Defendants contend that Section 240.37 is not overbroad because it contains an intent element and thus criminalizes only prostitution-related speech.  Defs.' Br. at 3.  Neither the facts alleged, which must be accepted as true for the purposes of this Motion, nor the text of the statute supports this argument.  As a factual matter, Named Plaintiffs who were speaking to others before they were arrested under Section 240.37 were not engaged in prostitution-related speech. *See, e.g.*, Am. Compl. ¶¶ 146-47 (K.H. arrested while walking and conversing with another transgender woman).  These arrests, as described in the Amended Complaint, illustrate that a substantial amount of constitutionally protected speech has been "chill[ed]" through the "enforcement of an overbroad law" that "imposes criminal sanctions."  *Hicks*, 539 U.S. at 119; *see also United States v. Rybicki*, 354 F.3d 124, 130 n.2 (2d Cir. 2003).  Despite conceding that the statute's legitimate sweep includes only prostitution-related speech, Defs.' Br. at 3,

---

[11] To the extent a scienter requirement is one factor that "*may* mitigate a law's vagueness," it is by no means the *only* factor relevant to the notice analysis, especially where, as here, the statute threatens to inhibit the exercise of First Amendment rights.  *Vill. of Hoffman Est. v. Flipside, Hoffman Est., Inc.*, 455 U.S. 489, 499 (1982) (emphasis added).

Defendants offer no legitimate explanation for why such criminal conduct cannot be targeted through the enforcement of N.Y.P.L. §§ 230.00 (Prostitution), 110.00 (Attempted Prostitution), 245.00 (Public Lewdness) or 245.01 (Exposure of a Person).[12]

As a textual matter, the statute provides no way for an officer to distinguish ordinary speech from prostitution-related speech other than to surmise a person's "purpose" based on impermissible factors. In other words, the *intent element itself* is impermissibly vague and therefore ineffective as a limiting construction. *See Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 576 (1987) (resolution banning First Amendment activity in airport terminal not saved by limiting construction to "only expressive activity unrelated to airport[s]" because proposed construction was itself vague and would give excess discretion in deciding whether activity was "airport-related," thereby inviting arbitrary enforcement).

## III. PLAINTIFFS ADEQUATELY PLEAD THAT DEFENDANTS INTENTIONALLY DISCRIMINATE ON THE BASIS OF RACE AND GENDER IN ENFORCING SECTION 240.37 (COUNTS 5, 6, 8, 11, 16, 18)

A plaintiff asserting a claim under the Equal Protection Clause of the Fourteenth Amendment need only allege either that defendants (1) applied a neutral law in an intentionally discriminatory manner, or (2) promulgated a policy that was motivated by discriminatory animus and that had an adverse effect. *Turkmen v. Hasty*, 789 F.3d 218, 253, 252 (2d Cir. 2015), *cert. granted*, 137 S. Ct. 293 (2016). Because motivations may be "eas[y to] conceal," *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015), plaintiffs need only allege facts establishing a "minimal inference of discriminatory motivation," *id.* at 84; *see Doe v. Columbia Univ.*, 831 F.3d 46, 55, 57 (2d Cir. 2016); *Hill v. City of New York*, 136 F. Supp. 3d 304, 335

---

[12] For the same reason, *United States v. Williams*, 535 U.S. 285 (2008), Defs.' Br. at 3, is inapposite. That case involved only "[o]ffers to engage in illegal transactions," *id.* at 297, whereas Section 240.37 criminalizes a broad range of lawful, protected speech.

(E.D.N.Y. 2015); *see also Howard v. Senkowski*, 986 F.2d 24, 27 n.2 (2d Cir. 1993). Plaintiffs

need *not* allege that defendants were motivated "solely, primarily, or even predominantly" by

plaintiffs' membership in the protected class. *United States v. City of Yonkers*, 96 F.3d 600, 611

(2d Cir. 1996); *see also Savino v. Town of Southeast*, 983 F. Supp. 2d 293, 302 (S.D.N.Y. 2013),

*aff'd*, 572 F. App'x 15 (2d Cir. 2014).[13]

Plaintiffs plausibly allege both that (1) Defendants apply Section 240.37 in an intentionally

discriminatory manner by targeting women of color, including transgender women, for arrest under

the statute, and (2) Defendant City and the Supervisor Defendants, motivated by race- and gender-

based animus, maintain policies, practices and customs of targeting women of color, including

transgender women, for enforcement under the statute.

### A.    Plaintiffs Plausibly Allege Intentional Discrimination on the Basis of Gender

#### 1.    *Statistical Evidence Supports an Inference of Intentional Gender Discrimination*

Allegations that defendants disproportionately targeted a protected class of individuals are

sufficient to plead intentional discrimination. *See Barber v. Henderson*, No. 12 Civ. 239, 2014 WL

4064036, at *6 (N.D. Okla. Aug. 15, 2014); *see also People United for Children, Inc.*, 108 F.

Supp. 2d at 296-97; *Diaz-Bernal v. Myers*, 758 F. Supp. 106, 134 (D. Conn. 2010) (allegations

---

[13] Defendants erroneously claim that Plaintiffs must allege that similarly situated individuals were treated
differently in order to state a claim. Defs.' Br. at 16-17. To the contrary, plaintiffs who allege that a "facially
neutral law or policy" is applied "in an intentionally discriminatory [] manner," or "with an adverse effect" that
was "motivated by discriminatory animus," are "not obligated to show a better treated, similarly situated group of
individuals . . . in order to establish a claim of denial of equal protection." *Pyke v. Cuomo*, 258 F.3d 107, 110 (2d
Cir. 2001). Although there is a limited exception in cases alleging "selective *prosecution*," *id.* at 109 (emphasis
in original), that exception is grounded in the "presumption of regularity" afforded to prosecutorial decisions,
*United States v. Armstrong*, 517 U.S. 456, 464 (1996), and has no relevance here. *See Brown v. City of Oneonta,
N.Y.*, 221 F.3d 329, 337 (2d Cir. 2000) (holding claim involving racially discriminatory enforcement by police
did not require pleading of different treatment of a similarly situated group), *overruled on other grounds by
Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002); *see also Pyke*, 258 F.3d at 110 (clarifying that *Brown*'s holding
applies to discriminatory applications of neutral laws); *Rodriguez v. Cal. Highway Patrol*, 89 F. Supp. 2d 1131,
1141 (N.D. Cal. 2000). In any event, Plaintiffs have plausibly alleged that they were treated differently from
similarly situated individuals. *See People United for Children, Inc. v. City of New York*, 108 F. Supp. 2d 275, 297
n.15 (S.D.N.Y. 2000) ("[S]tatistical evidence of the disparities between African American and white individuals . .
. implies that plaintiffs were treated differently than other similarly situated individuals.").

that defendants "targeted a primarily Latino neighborhood, [and] arrested people who appeared Latino" supported inference of discriminatory intent).

The Amended Complaint clearly alleges that women are arrested at much higher rates than men under Section 240.37.  Between 2012 and 2015, approximately 81% of arrestees under Section 240.37 were female and 67.5% of arrestees were Black and/or Latina females.  Am. Compl. ¶ 91 n.16; *see also id.* ¶ 92.  The experience of Named Plaintiffs underscores this point: men who engaged in substantially similar activities at the time of Ms. Grissom's and Ms. Bankston's arrests were not arrested by Defendants.  *See id.* ¶¶ 182, 207-09; *see Turkmen*, 789 F.3d at 253 (equal protection claim sufficiently pleaded where complaint alleged, *inter alia*, practice of investigating Egyptians who filmed city infrastructure while declining to investigate Russians engaged in similar activity).

  2.  *Arrests Based on Clothing Support an Inference of Intentional Gender Discrimination*

The Amended Complaint leaves no doubt that Defendants arrest women under Section 240.37 based on whether their clothing and appearance conform to gender stereotypes—a clear form of gender discrimination.  *See, e.g.*, *Price Waterhouse v. Hopkins*, 490 U.S. 228, 235, 250 (1989) (action taken on the basis of a sex stereotype, including "feminine[]" "dress," "make-up," "hair style[]" and "jewelry," constitutes discrimination motivated by gender) (plurality opinion); *Christiansen v. Omnicom Grp., Inc.*, No. 16 Civ. 748, 2017 WL 1130183, at *3-4 (2d Cir. Mar. 27, 2017); *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) ("[S]tereotyping of women . . . without more [can] be evidence of an impermissible, sex-based motive.").

As set forth at length in the Amended Complaint, NYPD officers target women for arrest who wear stereotypically feminine "provocative" or "revealing" clothing.  Officers also police

expressions of gender identity and sexuality by targeting and/or arresting transgender women whose clothing and appearance do not conform to officers' own subjective notions of gender conforming attire.  *See* Am. Compl. ¶¶ 69, 86-87, 121, 138, 153.

### 3.    *Offensive Comments Support Inference of Discriminatory Intent*

As alleged in the Amended Complaint, Defendants also intentionally engage in gender discrimination against transgender women[14] by targeting them for arrest without probable cause in large-scale sweeps of neighborhoods inhabited and/or frequented by transgender individuals.  *Id.* ¶¶ 72-75.

Even well beyond the pleading stage, courts have held that a defendant's discriminatory statements at the time of an alleged injury are sufficient to establish intentional discrimination.[15] *See Louis v. Metro. Transit Auth.*, 145 F. Supp. 3d 215, 226-27 (E.D.N.Y. 2015) (denying summary judgment on religious discrimination claim based on comments about plaintiff's religious dress and noting that whether comments established religion-based animus was "a credibility determination that must be left to a jury"); *see also Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013); *Savino*, 983 F. Supp. 2d at 303.[16]

The Amended Complaint is replete with comments supporting an inference of discriminatory intent.  The officer who arrested N.H. explicitly threatened her and other arrestees that transgender "girls like them" would be arrested if they were found outside after midnight, Am.

---

[14] As discussed below, *see infra* Part III.C, discrimination on the basis of transgender status is a form of gender discrimination.

[15] Defendants' characterization of their discriminatory remarks as "post-hoc," Defs.' Br. at 19, is puzzling given that the comments occurred during the course of the unlawful arrests, seizures and/or detentions. Compl. ¶¶ 74, 132, 168, 185.  In any event, comments made after an alleged discriminatory act are still evidence of discriminatory animus.  *See Savino*, 983 F. Supp. 2d at 303 (rejecting defendants' contention that comment made after discriminatory prosecution could not establish discriminatory motive); *D'Altilio v. Dover Twp.*, No. 06 Civ. 1931, 2008 WL 3925833, at *4 (M.D. Pa. Aug. 21, 2008) (defendant supervisor's ethnically disparaging remarks made after adverse employment action supported inference of discriminatory motive).

[16] *Brodt v. City of New York*, 4 F. Supp. 3d 562, 568-69 (S.D.N.Y. 2014), a religious discrimination action cited by Defendants, Defs.' Br. at 18-19, is readily distinguishable because the statements at issue there did not even mention or concern the plaintiff's religion.

14

Compl. ¶ 74; arresting officers persisted in calling N.H. a "boy" or "man" after she showed them identification indicating she was female, *id.* ¶ 132; Defendant Allen derisively called Ms. Martin a "he/she" after she showed her driver's license stating she was female, *id.* ¶¶ 166, 168; and Defendant Pocalyko repeatedly subjected Ms. Grissom to questions about her sex organs and ordered that she be strip-searched when she stated that she was a woman, *id.* ¶ 185; *see Adkins v. City of New York*, 143 F. Supp. 3d 134, 138 (S.D.N.Y. 2015) (discriminatory intent sufficiently alleged where defendants gawked at and inquired about plaintiff's genitalia); *Doe v. City of Belleville*, 119 F.3d 563, 575 (7th Cir. 1997) (among other allegations, inquiries about whether plaintiff was "a guy or a girl" established inference of gender-based harassment).

4.  *Falsification of Arrest Paperwork Is Sufficient to Allege Discriminatory Intent*

The law is clear that false statements made or approved in connection with a challenged action support an inference of discriminatory purpose. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000) ("[T]he trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."); *Turkmen*, 789 F.3d at 257 (approval of a false document supported inference of discriminatory intent).

Here, Defendants have made and/or approved false allegations in the arrest paperwork underlying every single Named Plaintiff's arrest. For example, Defendant Gomez falsely stated that he observed Ms. Gonzalez "attempt[] to stop five male motorists" before her arrest and that Ms. Gonzalez was wearing a "tight low cut shirt and miniskirt." Am. Compl. ¶ 200. In fact, Ms. Gonzalez had not beckoned to a single car that afternoon and was wearing long pants and a long-sleeve blouse at the time. *Id.* ¶¶ 195, 200. Similarly, Defendant Imburgia's paperwork documenting arrests made during the June 13, 2015 sweep placed her, impossibly, at multiple locations simultaneously. *Id.* ¶ 103; *see also id.* ¶¶ 121-22, 138-39, 153-54, 162, 171-73, 187-88,

200-01, 213-14, 228-29, 234-35; *infra* Part IV.A.

Moreover, the fact that *none* of the Named Plaintiffs was engaged in prostitution-related conduct at the time they were arrested, that *all* were arrested without probable cause and that *all* charges against them under Section 240.37 were ultimately dismissed, further undermines the integrity of the arrest paperwork and gives rise to an inference of Defendants' discriminatory intent.  *See* Am. Compl. ¶¶ 110-11, 123, 128-29, 140, 146-47, 155, 162-63, 175, 182-83, 190, 195-96, 203, 207-09, 212, 215, 221-23, 230-31, 237; *see Turkmen*, 789 F.3d at 255; *Valdez v. City of San Jose*, No. 09 Civ. 0176, 2013 WL 752498, at *7 (N.D. Cal. Feb. 27, 2013) (discriminatory comment and lack of probable cause for arrest created issue of fact concerning discriminatory motive); *Smith v. City of Chicago*, 143 F. Supp. 3d 741, 756 (N.D. Ill. 2015) (allegation that defendants conducted stop-and-frisks without legally sufficient reasons strengthened inference of intentional discrimination); *see also Lacey v. Maricopa Cty.*, 693 F.3d 896, 917 (9th Cir. 2012) (lack of probable cause for arrest supported inference of retaliatory animus).[17]

### B.    Plaintiffs Plausibly Allege Intentional Discrimination on the Basis of Race

As noted in Part III.A.1, *supra*, allegations that defendants disproportionately targeted a protected class of individuals are sufficient to plead intentional discrimination.  *See, e.g.*, *People United for Children, Inc.*, 108 F. Supp. 2d at 296-97; *Barber*, 2014 WL 4064036, at *6; *Diaz-Bernal*, 758 F. Supp. 2d at 134; *Nat'l Congress for Puerto Rican Rights v. City of New York*, 191 F.R.D. 52, 54 (S.D.N.Y. 1999) (upholding equal protection claim where plaintiffs alleged officers enforced policy "predominately on Black and Latino" males); *City of Chicago*, 143 F. Supp. 3d at 755 (equal protection claim sustained where people of color alleged "police officers target them . . .

---

[17] *Troy v. City of New York* is inapposite.  In *Troy*, a female plaintiff alleged gender and religious discrimination, but there were no facts alleged that evidenced any intent to discriminate on those grounds, and in fact the complaint actually noted that another women had been treated better and that the officers did not know her religion at the time of the events in question.  No. 13 Civ. 5082, 2014 WL 4804479, at *3, 9, 11 (S.D.N.Y. Sept. 25, 2014).

based on their race and or/national origin").  Plaintiffs have alleged numerous facts that, taken together, plausibly state a claim against Defendants for intentionally discriminating based on race in their enforcement of Section 240.37.

*First*, statistical evidence supports an inference that Defendants unlawfully target people of color under Section 240.37 at a higher rate than white individuals.  Between 2012 and 2015, 85% of arrestees under Section 240.37 were Black or Latino/a,[18] Am. Compl. ¶ 91 & n.16, and the five NYPD precincts with the highest rates of arrest under Section 240.37 comprise neighborhoods inhabited predominantly by racial minorities.  *Id.* ¶¶ 96-98.  *Second*, Defendants used racial slurs in the course of effecting arrests under Section 240.37, further evidencing their discriminatory intent.  *See id.* ¶ 210; *see, e.g., Louis*, 145 F. Supp. 3d at 226-27; *Savino*, 983 F. Supp. 2d at 303.  *Third*, former NYPD officers have *admitted* that NYPD performance goals and arrest quotas cause them to arrest "the black, [] the Hispanic,"—the most "vulnerable" communities.  Am. Compl. ¶ 78.  *Finally*, as shown in Part III.A.4, *supra*, Defendants' falsification of Named Plaintiffs' arrest paperwork, and the fact that Plaintiffs were arrested without probable cause, further corroborates Defendants' discriminatory motives.

## C.     Defendants Are Not Entitled to Qualified Immunity

Defendants who arrested or supervised the arrests of the transgender Named Plaintiffs assert qualified immunity solely in connection with Plaintiffs' equal protection claims on the theory that, between 2012 and 2015, an officer could have reasonably believed it was constitutionally permissible to discriminate against transgender women.  Putting aside that, as of 2012, NYPD's own Patrol Guide explicitly prohibited police action on the basis of gender identity, Am. Compl. ¶ 105; NYPD Patrol Guide 2013-A at ¶ 2 (excerpt effective May 16, 2012)

---

[18] By comparison, Black or Latino/a individuals comprised approximately 55% of the New York City population in 2015.  *See* U.S. Census Bureau, *ACS Demographic and Housing Estimates*, *New York City, New York*, https://factfinder.census.gov/bkmk/table/1.0/en/ACS/15_5YR/DP05/1600000US3651000 (last visited Apr. 4, 2017).

(Zutshi Decl. Ex. A), Defendants' argument is legally deficient.

An officer is not entitled to qualified immunity if, at the time of the constitutional injury, the contours of a constitutional right are clearly established, such that "a reasonable official would understand what he [or she] is doing violates that right." *Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006). A constitutional right may be clearly established in novel factual circumstances, and prior case law need not even be "fundamentally similar" to the constitutional violation at issue. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Instead, it need only provide "fair warning" that an officer's conduct is unconstitutional. *Id.*; *see also Back*, 365 F.3d at 129.

At the time of Plaintiffs' arrests, Defendants were clearly on notice that it was impermissible to discriminate against transgender women when enforcing the State's penal laws. It has been clearly established for more than two decades that discrimination on the basis of gender is entitled to heightened scrutiny, *United States v. Virginia*, 518 U.S. 515, 555 (1996), and that discrimination based on nonconformity with gender stereotypes is a form of sex discrimination, *see Hopkins*, 490 U.S. at 235, 250 ("[A]n employer who acts on the basis of a belief that a woman cannot be aggressive . . . has acted on the basis of gender.") (plurality opinion); *see also Back*, 365 F.3d at 119 ("It was eminently clear by 2001 . . . that adverse actions" based on "gender stereotypes can constitute sex discrimination."); *Christiansen*, 2017 WL 1130183, at *3-4. Furthermore, numerous courts have recognized that discrimination based on transgender status is also a clear form of gender discrimination. *See Glenn v. Brumby*, 663 F.3d 1312, 1319, 1321 (11th Cir. 2011); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 572 (6th Cir. 2004) ("Having alleged that his failure to conform to sex stereotypes concerning how a man should look and behave was the driving force behind Defendants' actions, [transgender plaintiff] has sufficiently pleaded claims of

. . . gender discrimination."); *Adkins*, 143 F. Supp. 3d at 139;[19] *see also Rosa v. Park W. Bank & Trust Co.*, 214 F.3d 213, 215-16 (1st Cir. 2000).[20]

Even if discrimination against transgender women was not clearly impermissible at the time, no reasonable officer could genuinely believe—and Defendants do not contend—that discriminatorily enforcing the law against transgender individuals is rationally related to a legitimate purpose. *See Romer v. Evans*, 517 U.S. 620, 634-35 (1996) ("[A] bare . . . desire to harm a politically unpopular group cannot constitute a legitimate government interest"); *Kastl v. Maricopa Cty. Cmty. Coll. Dist.*, No. 02 Civ. 1531, 2004 WL 2008954, at *8 (D. Ariz. June 3, 2004) (school's bathroom policy requiring transgender women to prove lack of male genitalia failed rational basis review).

### D. Plaintiffs Plausibly Allege Intentional Discrimination Under 42 U.S.C. §§ 1981, 2000d and New York Civil Rights Law §§ 40-c, 40-d, 79-n

For the reasons shown in Part III.A-C, *supra*, Plaintiffs have adequately alleged that Defendants enforce Section 240.37 in an intentionally discriminatory manner.

## IV. PLAINTIFFS ADEQUATELY PLEAD THAT THE SWEEP DEFENDANTS CONSPIRED TO ENFORCE SECTION 240.37 IN A DISCRIMINATORY MANNER (COUNT 10)

Defendants challenge Plaintiffs' conspiracy claim on two limited grounds: first, that there was no alleged conspiratorial agreement motivated by discriminatory animus, and second, that the intracorporate conspiracy doctrine precludes the claim. Both arguments fail.[21]

---

[19] The *Adkins* court ultimately granted qualified immunity to officers on the plaintiff's claims of gender identity discrimination because the court determined that detaining the transgender individual in a separate cell was reasonable in light of prior complaints by transgender detainees that they were held with individuals who posed a threat to their safety. 143 F. Supp. 3d at 141. By contrast, there is no legitimate reason here for Defendants to target transgender women for arrest under Section 240.37, and Defendants have offered none.

[20] Defendants cite only one case in support of their qualified immunity argument, *White v. City of New York*, 206 F. Supp. 3d 920, 932 (S.D.N.Y. 2016), which notes that the Second Circuit has not yet held that transgender persons "compose a class that is subject to heightened scrutiny." Even so, the Second Circuit has held as early as 2004 in *Back* that discrimination based on gender stereotypes constitutes sex discrimination.

[21] Plaintiffs have adequately pleaded discriminatory intent, as shown in Part III, *supra*.

A.   **The Sweep Defendants Engaged in a Conspiracy to Deprive the Transgender Plaintiffs of the Equal Protection of the Laws Under 42 U.S.C. § 1985(3)**

A plaintiff may plead the existence of a conspiratorial agreement by alleging that defendants entered into an explicit or tacit agreement to commit an unlawful act. *See Turkmen*, 789 F.3d at 262-63; *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) ("[C]onspiracies are by their very nature secretive operations," and conspiratorial agreements may be "proven by circumstantial, rather than direct, evidence.").[22]  Plaintiffs allege at least four independent sets of facts that plausibly support the inference that Defendants entered into an unlawful conspiratorial agreement.

*First*, the Sweep Defendants engaged in a planned, concerted effort to carry out a sweep of arrests in a neighborhood frequented by transgender individuals, as evidenced by the high volume of arrests within short periods of time and the presence of multiple officers involved in the arrests. Specifically, during the June 6, 2015 sweep, six officers in the 52nd Precinct arrested at least eight transgender women in approximately two hours.  Am. Compl. ¶ 74.  Only one week later, four officers from the same precinct arrested at least six transgender women in less than 30 minutes. *Id.* ¶ 75.  In both sweeps, officers worked in concert to round up transgender women, arrest them and transport them to the precinct station. *Id.* ¶¶ 112, 114, 146, 148; *see Kastle v. Town of Kent, N.Y.*, No. 13 Civ. 2256, 2014 WL 1508703, at *10 (S.D.N.Y. Mar. 21, 2014).[23]

*Second*, the Sweep Defendants' agreement to coordinate and carry out their unlawful

---

[22] While discovery will uncover further evidence of the specific place(s) and date(s) of the agreement, no such specificity is required at the pleading stage. *See Anilao v. Spota*, 774 F. Supp. 2d 457, 512-13 (E.D.N.Y. 2011); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Accordingly, *Leon v. Murphy* is inapposite. *Leon* was decided at the summary judgment stage based on discovery evidence that "flatly contradicted" the plaintiff's "bare allegations" of conspiracy.  988 F.2d 303, 311 (2d Cir. 1993).

[23] Because D.H., N.H. and K.H. were not engaged in any unlawful conduct related to prostitution when they were arrested without probable cause and all charges against them were eventually dismissed, Am. Compl. ¶¶ 110-11, 123, 128-29, 140, 146-47, 155, this case is readily distinguishable from *Corsini v. Bloomberg*, 26 F. Supp. 3d 230, 241, 245 (S.D.N.Y. 2014), where the plaintiff, whose conspiracy claim related to allegations of false arrest and malicious prosecution, was lawfully arrested and ultimately convicted.

arrests is evident from their efforts to falsify the accompanying arrest paperwork. *See* Am. Compl. ¶¶ 103, 121-22, 138-39, 153-54. For example, Defendant Imburgia's paperwork documenting arrests made during the June 13, 2015 sweep placed her, impossibly, at multiple locations at the same time. *Id.* ¶ 103. That fact alone is sufficient to plead an agreement to engage in, and thereafter conceal, unlawful conduct. *See Turkmen*, 789 F.3d at 262 (holding "joint approval of [a] false document . . . supports the reasonable inference" that defendants entered into a conspiracy); *Ali v. Connick*, 136 F. Supp. 3d 270, 282 (E.D.N.Y. 2015) (defendants' approval of false medical document could establish an "agreement to falsify testimony and cover up an unconstitutional use of force"); *Coggins v. Cty. of Nassau*, 988 F. Supp. 2d 231, 248-49 (E.D.N.Y. 2013) (allegations that defendants engaged in improper practices, including falsification of documents related to arrests, were sufficient to state a conspiracy claim), *aff'd in part*, 776 F.3d 108 (2d Cir. 2015).

*Third*, the explicit threat made by N.H.'s arresting officer to the transgender women arrested in the June 6, 2015 sweep—that if officers saw "girls like them" (transgender women) outside after midnight, the officers would arrest them—further corroborates the conspiratorial agreement between the Sweep Defendants. Am. Compl. ¶ 134; *see Climo v. Rustin*, No. 11 Civ. 1339, 2012 WL 3779178, at *14 (W.D. Pa. Aug. 31, 2012) (defendant's threatening remark, among other unlawful conduct, supported plausible inference of conspiracy).[24]

*Fourth*, Defendants had a plausible motive for a conspiracy: to meet NYPD's performance goals and quotas. Am. Compl. ¶¶ 77-79. In fact, former NYPD officers have confirmed that

---

[24] Defendants' argument that the phrase "girls like them" referred to individuals engaged in prostitution-related activity, Defs.' Br. at 15, is baseless. First, it makes no sense that officers would restrict their arrests of women engaged in illegal conduct to "after midnight." Am. Compl. ¶ 134. Second, at the time of her arrest, there was no indication that N.H. was engaged in any prostitution-related conduct. *Id.* ¶ 129. Third, the comment referred to an area where many transgender individuals live, work and gather socially. *Id.* ¶ 72, 74. Accordingly, it defies common sense to interpret the comment in the way Defendants suggest.

NYPD officers target "vulnerable" minorities to "come up with numbers." *Id.* ¶ 78.[25]

### B.     The Intracorporate Conspiracy Doctrine Does Not Bar Plaintiffs' Claims

The intracorporate conspiracy doctrine does not bar Plaintiffs' conspiracy claims because the Amended Complaint alleges that the Sweep Defendants conspired to pursue "independent, personal conspiratorial purposes." *Yeadon v. N.Y. City Transit Auth.*, 719 F. Supp. 204, 212 (S.D.N.Y. 1989); *see also De Litta v. Vill. of Mamaroneck*, 166 F. App'x 497, 499 (2d Cir. 2005). Specifically, the Amended Complaint alleges that each of the Sweep Defendants (1) conspired to engage in arrest sweeps to meet arrest quotas and performance goals, Am. Compl. ¶¶ 75-79; *see Yeadon*, 719 F. Supp. at 207, 212 (holding intracorporate conspiracy doctrine did not apply where officers allegedly "sought to improve their arrest records"); *see also Ali*, 136 F. Supp. 3d at 283, and (2) systematically falsified arrest paperwork to cover up the unlawful nature of their actions, *see id.* at 282-83; *see also Coggins*, 988 F. Supp. 2d at 249 (holding intracorporate conspiracy doctrine did not apply where officers falsified reports regarding plaintiff's arrest); *Hill v. City of New York*, No. 03 Civ. 1283, 2005 WL 3591719, at *6 (E.D.N.Y. Dec. 30, 2005).[26]  Further, Defendants' argument is plainly premature at the motion to dismiss stage, where "factual questions" preclude a determination that "[d]efendants resemble the single policymaking body of a corporation." *Turkmen*, 789 F.3d at 263.

## V.     THE NYPD IS A PROVIDER OF PUBLIC ACCOMODATION (COUNTS 12, 19)[27]

Defendants seek dismissal of Plaintiffs' claims under the NYSHRL and Title 8 of the NYCHRL based solely on their incorrect assertion that the NYPD does not provide a public

---

[25] By contrast, *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002), Defs.' Br. at 14, dismissed a conspiracy claim due to the "adversarial relationship" between the alleged conspirators, which suggested a lack of a conspiratorial motive.

[26] Defendants cite only two cases in arguing that the intracorporate conspiracy doctrine applies, but neither one addresses the situation where conspirators allegedly pursued independent, personal conspiratorial purposes.

[27] Defendants failed to raise this issue and the issue of the Supervisory Defendants' personal involvement in Defendants' pre-motion letter to the Court, Dkt. No. 81, as required by Rule 4(A)(iii) of this Court's Rules.

accommodation.  Defs.' Br. at 21-22.  The NYSHRL "defines 'place of public accommodation' . . . inclusively," *U.S. Power Squadrons v. State Human Rights Appeal Bd.,* 59 N.Y.2d 401, 409 (1983), and the statutory definition has been expanded repeatedly, "provid[ing] a clear indication that the Legislature used the phrase place of public accommodation 'in the broad sense of providing conveniences and services to the public' and that it intended that the definition . . . be interpreted liberally," *Cahill v. Rosa,* 89 N.Y.2d 14, 21 (1996).[28]

The NYPD is clearly an "establishment[] dealing with . . . services of any kind," operated by "a state or local government."  N.Y. Exec. Law § 292(9).[29]  *See Williams v. City of New York*, 121 F. Supp. 3d 354, 369 (S.D.N.Y. 2015) (upholding arrestee's ADA, NYSHRL and NYCHRL claims against NYPD); *see also Boureima v. N.Y.C. Human Res. Admin.*, 128 A.D.3d 532, 533 (First Dep't 2015) (NYC Human Resources Administration is "provider of public accommodation" within meaning of NYCHRL); *Gifford v. McCarthy*, 137 A.D.3d 30, 36 (Third Dep't 2016) ("critical factor" in public accommodation analysis is whether facilities or services "are made available to the public at large").  Nor is the NYPD one of the entities exempt from coverage under the relevant statutes.  *See Cahill*, 89 N.Y.2d at 22 (New York "Legislature intended that . . . that exemptions . . . be narrowly construed").[30]

---

[28] *Cahill*, the sole case on which Defendants rely, actually undermines their argument, as the Court of Appeals held that the public accommodation definition must be construed expansively, finding a private dentist office was a place of public accommodation.  *Id.*

[29] The NYCHRL definition of public accommodation is similar to but "more expansive" than its state counterpart. *Doe v. City of New York*,  976 N.Y.S.2d 360, 363 (Sup. Ct. N.Y. Cty. 2013); *see also* N.Y.C. Admin. Code § 8-130(a).

[30] Not surprisingly, courts in states with similar anti-discrimination statutes have treated police departments as providers of public accommodation.  *See Vandegrift v. Bowen*, No. 07 Civ. 2623, 2009 WL 1913412, at *3 (D.N.J. Jun. 30, 2009) ("It is well settled that the discriminatory acts of law enforcement officers are considered public accommodation discrimination under the [New Jersey Law against Discrimination]."); *Ptaszynski v. Uwaneme*, 853 A.2d 288, 297 (N.J. Super. Ct. App. Div. 2004) (law protecting individuals from discrimination in places of public accommodation applies to individual officers); *Diamond v. Witherspoon*, 696 N.W.2d 770, 779-80 (Mich. Ct. App. 2005) (law protecting individuals from discrimination in "employment, public accommodations or public services, education, or housing," applies to police conduct).  Moreover, while Defendants appear to suggest—again, without support—that the NYPD provides a public accommodation but not to individuals suspected of a crime, that argument is baseless and runs counter to the decisions in both *Williams* and *Ptaszynski*.

## VI.   THE NOTICE OF CLAIM REQUIREMENT DOES NOT APPLY BECAUSE PLAINTIFFS' STATE LAW CLAIMS SEEK TO VINDICATE PUBLIC RIGHTS

As Defendants admit, the New York State notice of claim requirement does not apply where plaintiffs seek to vindicate a public right and their state law claims for money damages are incidental to that objective.  *See, e.g.*, *Green v. City of New York*, 438 F. Supp. 2d 111, 125 (E.D.N.Y. 2006) (purported class action to vindicate the rights of Medicaid recipients falls within the public interest exception); Defs.' Br. at 24.

Defendants do not contest that Plaintiffs' state law claims, like their federal claims, seek broad injunctive relief on behalf of a class based on claims that the State's penal law is arbitrarily and discriminatorily enforced against women of color and transgender women.  The damages sought by Named Plaintiffs to redress the individual harms they suffered during the course of false arrests are clearly incidental to the broader constitutional questions and State-wide interests at stake.[31]  *Cf. Davis v. City of New York*, 902 F. Supp. 2d 405, 438 (S.D.N.Y. 2012) (rejecting defendant's notice of claim argument notwithstanding individual compensatory damages claims, because the class action involved "matters of grave public concern"); *see also Butler v. Suffolk County*, 289 F.R.D. 80, 95 (E.D.N.Y. 2013); *Union Free Sch. Dist. No. 6 v. N.Y. State Human Rights Appeal Bd.*, 35 N.Y.2d 371, 380 (1974) (applying the public interest exception in class action alleging the school board's mandatory maternity leave policy was discriminatory).[32]

## VII.   THE AMENDED COMPLAINT ADEQUATELY PLEADS THE PERSONAL INVOLVEMENT OF SUPERVISORY DEFENDANTS

Defendants assert—without any legal or factual support—that Plaintiffs' allegations concerning the involvement of Defendants McKenna, Maloney, Daverin and Beddows (the

---

[31] Indeed, if Plaintiffs were suing primarily for damages, there would be no need and no incentive for them to bring a class action.

[32] Defendants' reliance on *Atkins v. Cty. of Orange* is misplaced, because in that case, the plaintiffs' claims were "solely" for monetary compensation.  251 F. Supp. 2d 1225, 1235 (S.D.N.Y. 2003); Defs.' Br. at 24.

"Supervisory Defendants") are insufficient.  To the contrary, Plaintiffs allege the personal involvement of the Supervisory Defendants under three distinct theories of liability.  Specifically, the Supervisory Defendants (1) participated directly in the alleged constitutional violations; (2) failed to remedy the violations after learning of them through a report or appeal; or (3) created a custom or policy fostering the violations or allowed the custom or policy to continue after learning about them.  *Colon v. Coughlin*, 58 F. 3d 865, 873 (2d Cir. 1995).

*First*, Supervisory Defendants participated directly in the alleged violations of law. According to the NYPD Patrol Guide, officers with supervisory authority must review arrest paperwork and supporting depositions for completeness and accuracy.  Am. Compl. ¶ 35 n.4 (citing Patrol Guide, PG 208-03, ¶¶ 26-34).  The Supervisory Defendants approved the unlawful arrests of D.H., N.H., K.H., Ms. Gonzalez and Ms. Bankston.  *Id.* ¶¶ 34-36, 74, 103, 122, 124, 154, 156, 201, 204, 214, 217.  *See Crews v. Cty. of Nassau*,  No. 06 Civ. 2610, 2007 WL 4591325, at *11 n.10 (E.D.N.Y. Dec. 27, 2007) (denying motion to dismiss where plaintiff alleged that defendants were "personally involved in the decisions related to his arrest and had knowledge of the allegedly unlawful actions of their subordinates").  *Second*, the Supervisory Defendants failed to remedy misconduct by NYPD officers by failing to "monitor or reprimand officers" who targeted transgender women in arrest sweeps and failing to review and/or approve the resulting arrest paperwork from the sweeps.  Am. Compl. ¶¶ 35-36; *see Wright v. Smith*, 21 F.3d 496, 502 (2d Cir. 1994).  *Third*, the Supervisory Defendants failed to undertake appropriate monitoring and supervision measures and instead permitted the NYPD's discriminatory enforcement of 240.37 to continue unchecked.  *See* Am. Compl. ¶¶ 71, 103, 122, 139, 201, 214; *Walker v. Vill. of Freeport*, No. 15 Civ. 4646, 2016 WL 4133137, at *7 (E.D.N.Y. June 13, 2016).

## CONCLUSION

For the reasons stated above, Defendants' Partial Motion to Dismiss should be denied.

Dated: New York, New York
      April 7, 2017

Respectfully submitted,

**THE LEGAL AID SOCIETY**

By: /s/ Cynthia H. Conti-Cook

Seymour W. James
William D. Gibney
Kimberly Forte
Kate Mogulescu
Cynthia H. Conti-Cook

199 Water Street, 6th Fl.
New York, NY 10038
Tel: (212) 577-3300

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

By: /s/ Rishi Zutshi

Lawrence B. Friedman
Rishi Zutshi
Anna F. Connolly

One Liberty Plaza
New York, NY 10006
Tel: (212) 225-2000
Fax: (212) 225-3999

*Attorneys for Plaintiffs*